UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KARINA E. FLORES-GRGAS; MIKE GRGAS,

Plaintiffs,

-against-

NEW YORK CITY ADMINISTRATION FOR
CHILDREN SERVICES; CATHOLIC
GUARDIAN SERVICES,

Defendants.

21-CV-5912 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, United States District Judge:

Plaintiffs Karina E. Flores-Grgas ("Flores-Grgas") and Mike Grgas, who are appearing

*pro se*, allege that Defendants violated their federally protected rights. They seek custody of their

children and money damages. They sue (1) the New York City Administration for Children's

Services ("ACS") and (2) Catholic Guardian Services ("CGS"). By order dated July 16, 2021,

the court granted Plaintiffs' request to proceed without prepayment of fees, that is, *in forma*

*pauperis* ("IFP"). For the reasons set forth below, the Court dismisses this action.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is

frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see*

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also

dismiss a complaint when the Court lacks subject-matter jurisdiction. *See* Fed. R. Civ. P.

12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court of the United States has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiffs bring this action regarding the decisions of ACS and the New York State courts to remove Plaintiffs' children – F.S., G.G., and M.G. – from Plaintiffs' custody and to place the

children up for adoption.[1] F.S. was removed from Plaintiffs' custody in 2011, G.G. was removed

from their custody in 2013, and M.G. was removed in 2014.[2] (ECF 5, at 5.)

      The following allegations are taken from the complaint, which is not a model of clarity.

When Flores-Grgas missed a doctor's appointment,

> ACS came to my home and asked me if I have family or friends that I can go to
> with my baby and that they were going to take me because supposedly my place
> smelled because of the cat I had and that I had to get rid of the cat if I want to
> come back to my place and live there with my baby, so I started getting my baby
> and myself ready to go with ACS to my parents house when ACS came inside the
> room where I was getting ready with my baby and asked if I had any prescribed
> medication that I was taking for which I showed them the medication bottle that
> the doctor gave me to take if I think I needed it which I only took one pill because
> I didn't need to take it as the doctor told me he didn't think I needed it either.

(*Id.* at 9.)

      ACS then "false[ly] accused" Flores-Grgas of not taking her prescribed medication, and

"wrongly removed" her 2 ½ year-old baby F.S. "without having any proof or evidence for their

false accusations or any motive for my baby's remov[al] because I never abused or neglected my

baby [F.S.] or any of my children as ACS lied about me." (*Id.*) Plaintiffs further maintain that

Flores-Grgas did not take her prescribed medication because she "didn't have any mental health

issues." (*Id.*)

      To dispute the removal of F.S., Plaintiffs "brought witnesses" to ACS's office in

Manhattan, but ACS "didn't accept their testimony or support and sent me to the family court

---

[1] Under Rule 5.2(a)(3) of the Federal Rules of Civil Procedure, any reference to a minor child must be limited to the child's initials. Because Plaintiffs refer to the minor children using their full names, the Court has asked the Clerk of Court to limit electronic access to the complaint to a "case-participant only" basis. The Court reminds Plaintiffs that going forward, they must refer to the minor children solely by the children's initials.

[2] Flores-Grgas also alleges that she had a prior custody dispute in Brooklyn, New York, over her son C., but does not provide dates as to when C. was removed from her custody. (*See id*. at 6-7.) C.'s custody does not appear to be a subject of this action.

where they accused me of all ACS false accusations against me and ordered me to get therapy

and visitations with my child." (*Id.*) Because of these same "lies," G.G. and M.G. were also

removed from Plaintiffs' custody. (*Id.*)

Plaintiffs appealed the orders of the Family Court to the New York State Supreme Court,

Appellate Division, First Department, but only the termination of their parental rights for G.G.

and M.G. were appealed "because the rest of the orders like the removed orders and the

termination of parental rights for my child [F.S.] were not appeal[led] for unknown reasons to

us." (*Id.* at 11.) Plaintiffs also state that they did not appeal "the family court orders before 2017

. . . because the attorneys assigned to us by the family court didn't tell us anything that we can

appeal the orders of the family court in the appellate division court." (*Id.*) According to Plaintiffs,

their appeals were denied by the Appellate Division because the trial transcripts showed that

Flores-Grgas said she was not sure if she had been diagnosed with schizoaffective disorder, and

because Mike Grgas failed to pay child support and was not considered the legal father of the

children. (*See id.*)

After the Appellate Division denied Plaintiffs' appeals, the children were adopted: F.S. on

February 18, 2018; G.G. on June 4, 2019; and M.G. on October 4, 2019. Plaintiffs asked the

New York County Supreme Court to review the Family Court's adoption proceedings. Plaintiffs

write, "ACS opposed our petition on the statute of limitations for the removed of our children,

the termination of our parental rights orders were appealed and that the supreme court has no

jurisdiction to appeal the adoptions because [this] is a family court matter." (*Id.* at 12.) It appears

that the Supreme Court dismissed Plaintiffs' action.

Plaintiffs then filed a "petition for custody and visitation" in the Family Court. The

Family Court denied the petition "saying that we have no rights to file for custody . . . [and]

4

cannot file a notice of appeal to appeal to adoptions orders because our children are already

adopted and we can't do anything about it anymore." (*Id.*) The Family Court also denied

Plaintiffs "copies of the orders that are requested to appeal the adoptions in the appellate division

court." (*Id.*) Plaintiffs appear to suggest that they tried to appeal the Family Court decision to the

Appellate Division, but the Appellate Division told them that

> if we can't get the copy of the orders and file a notice of appeal in the family court
> we cannot appeal the adoptions of our children, they told us to go back to the
> family court and request again the orders and to file a notice of appeal for the
> appeal of the adoptions.

(*Id.* at 12-13.)

It appears that Plaintiffs also challenge the conditions in F.S. and M.G.'s adoptive home,

including that there are other people living in the house, Plaintiffs believe the children have

missed school, and that Flores-Grgas maintains that F.S and M.G "look skinny." (*See id.* at 15.)

Plaintiffs seek "an appeal of the adoptions orders from the family court" as well as money

damages. (*Id.* at 15.)

## DISCUSSION

Because Plaintiffs allege that their constitutional rights have been violated, the Court

construes the complaint as asserting claims under 42 U.S.C. § 1983. To state a claim under

section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of

the United States was violated, and (2) the right was violated by a person acting under the color

of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

## A.    Claims against ACS

Plaintiff's claims against ACS must be dismissed because an agency of the City of New

York is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and

proceedings for the recovery of penalties for the violation of any law shall be brought in the

name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Friedman v. N.Y.C. Admin. For Children's Servs.*, 502 F. App'x 23, 27 n.3 (2d Cir. 2012) (summary order) (ACS is not a suable entity); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). Accordingly, the Court dismisses Plaintiffs' claims against ACS for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court construes Plaintiff's claim as one against the City of New York, which is a suable entity, and finds that Plaintiff's claim fails to meet the standard for municipal liability. When a plaintiff sues a municipality, such as the City of New York, under section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under section 1983 against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiffs allege no facts suggesting that a policy, custom, or practice of the City of New York caused a violation of their constitutional rights. The Court therefore dismisses any claims

6

Plaintiffs may be asserting under section 1983 against City of New York for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.     Claims against Catholic Guardian Services**

The Court must also dismiss Plaintiffs' claims against CGS. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted); *see also Tancredi v. Metro. Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action.").

CGS is a private organization.[3] The activity of a private entity can be attributed to the state in three situations: (1) the entity acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) the entity willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) the state has delegated a public function to the entity (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012). The fundamental question under each test is whether the private entity's challenged actions are "fairly attributable" to the state. *Id.* (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

---

[3] Catholic Guardian Services is a private non-profit organization. *See* Catholic Guardian Services, https://www.catholicguardian.org/ (last visited July 23, 2021). Generally, courts may take judicial notice of publicly available terms, including from a website. *See Force v. Facebook, Inc.*, 934 F.3d 53, 60 (2d Cir. 2019) (citing *23-34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health*, 685 F.3d 174, 183 n.7 (2d Cir. 2012) (taking judicial notice of content of website whose authenticity was not in question)).

In analyzing whether a private entity acts under color of state law for purposes of section 1983, the district court begins "by identifying the specific conduct of which the plaintiff complains," rather than the general characteristics of the entity. *Id.* Moreover, the fact that an entity receives public funds does not turn private action into state action, and acts of private contractors do not become acts of the government. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982). Further, a private entity does not become a state actor merely by acting in accordance with a state contract. *See, e.g.*, *Ortega v. Samaritan Vill. Myrtle Ave. Men's Shelter*, No. 18-CV-5995, 2020 WL 1043305, at *3 (E.D.N.Y. Mar. 4, 2020) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982)).

Plaintiffs bring section 1983 claims against CGS, but they do not allege any facts suggesting that CGS's actions are attributable to the City of New York. In fact, Plaintiffs fail to allege any facts that implicate CGS in the events giving rise to their claims. The Court therefore dismisses Plaintiff's claims against CGS for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## C.    *Rooker-Feldman* **and domestic relations abstention**

Even if Plaintiffs had sued an appropriate defendant, their claims are barred by the *Rooker-Feldman* doctrine and the domestic relations abstention doctrine.

### 1.    *Rooker-Feldman* **doctrine**

To the extent that Plaintiffs challenge the outcomes of state court proceedings regarding the custody or adoption their three children, their claims are barred under the *Rooker-Feldman* doctrine. The doctrine – created by two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983) – precludes federal district courts from reviewing final judgments of the state

courts. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that federal district courts are barred from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases."). The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

Here, Plaintiffs lost in state court, complain of injuries caused by the state court judgments, and ask this Court to review and reject the state courts' judgments regarding the custody and adoption of their children. Plaintiffs' claims are barred under the *Rooker-Feldman* doctrine.

### 2.    Domestic relations abstention doctrine

The domestic relations abstention doctrine requires this Court to abstain from exercising federal question jurisdiction over domestic relations issues, such as those implicated in Plaintiffs' claims. In 1990, in *American Airlines, Inc. v. Block*, the United States Court of Appeals for the Second Circuit instructed federal district courts to abstain from exercising federal question jurisdiction over claims involving domestic relations issues, so long as those claims could be fully and fairly determined in the state courts. *See* 905 F.2d 12, 14 (2d Cir. 1990) (holding that

federal district court should abstain from exercising its federal-question jurisdiction over claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child . . . ." (internal quotation marks and citation omitted)).

Two years after the Second Circuit issued its decision in *American Airlines*, the Supreme Court of the United States held, in *Ankenbrandt v. Richards*, that a previously recognized exception to the federal district courts' subject-matter jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees" in actions brought under a federal district court's diversity jurisdiction. 504 U.S. 689, 703 (1992).

In *Deem v. DiMella-Deem*, the Second Circuit held that regardless of the Supreme Court's holding in *Ankenbrandt*, its own previous holding in *American Airlines* remains good law. 941 F.3d 618, 621 (2d Cir. 2019). Thus, "[a]lthough the domestic relations '*exception*' to subject matter jurisdiction recognized by the Supreme Court in *Ankenbrandt* . . . does not apply in federal-question cases, the domestic relations *abstention* doctrine articulated in *American Airlines* does." *Id.* (emphasis in original). Federal district courts must therefore abstain from exercising their federal-question jurisdiction over claims involving domestic-relations issues and dismiss those types of claims for lack of jurisdiction when they are asserted under diversity jurisdiction. *See id.* at 621-24.

Here, Plaintiffs assert claims under the Court's federal question jurisdiction and ask this Court to either vacate or overturn the Family Court's orders, or to otherwise intervene in child custody proceedings. Moreover, Plaintiffs' allegations do not suggest that they were denied a full and fair hearing in the state courts. The Court must abstain from exercising its federal question jurisdiction over their claims arising from the Family Court's orders and their enforcement. *See*

10

*Deem*, 941 F.3d at 621-25 (affirming *sua sponte* dismissal under domestic relations abstention doctrine).

**D.      Supplemental jurisdiction**

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiffs may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

### LEAVE TO AMEND IS DENIED

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiffs' complaint cannot be cured with an amendment, the Court declines to grant Plaintiffs leave to file an amended complaint.

## CONCLUSION

The Court dismisses Plaintiffs' claims for failure to state a claim on which relief may be granted, 28 U.S.C. § 1915(e)(2)(B)(ii), and as barred under the *Rooker-Feldman* doctrine and the domestic relations abstention doctrine.

The Court declines to exercise supplemental jurisdiction over any state law claims Plaintiffs may be asserting. 28 U.S.C. § 1367(c)(3).

The Court directs the Clerk of Court to transmit a copy of this order to Plaintiffs. Plaintiffs have consented to receive electronic services of notices and documents in this action. (ECF 4-6.)

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:    August 9, 2021
          New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge